IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VICTORIA HUDDLESTON,

     Plaintiff,

v.

METROPOLITAN ATLANTA RAPID
TRANSIT AUTHORITY,

     Defendant.

CIVIL ACTION FILE NO.
1:23-cv-04552-SDG-LTW

## <u>MAGISTRATE JUDGE'S</u><br><u>NON-FINAL REPORT AND RECOMMENDATION</u>

This case is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Metropolitan Atlanta Rapid Transit Authority ("MARTA").  [Doc. 13].  Plaintiff Victoria Huddleston filed her Complaint in this action on October 5, 2023.  [Doc. 1].  Plaintiff filed an Amended Complaint, which is the operative pleading in this case, on January 17, 2024. [Doc. 10].  Plaintiff asserts claims for disability discrimination and retaliation pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*  [<u>Id.</u>].  Defendant MARTA moves to dismiss Plaintiff Huddleston's Amended Complaint for failure to state a claim upon which relief can be granted.  [Doc. 13].

I.      **PLAINTIFF'S ALLEGATIONS**

Plaintiff's Amended Complaint asserts that she worked for Defendant MARTA for 22 years as a Bus Operator. [Doc. 10 ¶ 20]. Plaintiff's job required her to come in close contact with passengers entering and exiting the bus. [Id. ¶ 21]. Plaintiff alleges that on March 16, 2020, she took medical leave because her disabilities in the form of asthma, diabetes, and rheumatoid arthritis put her at a high-risk for serious medical consequences related to contracting COVID-19. [Id. ¶ 22]. Plaintiff submitted a doctor's letter to her employer on November 11, 2020, releasing her to return to work on November 30, 2020, with certain restrictions. [Id. ¶ 24]. Plaintiff's doctor recommended that "Ms. Huddleston may be allowed to return to work, on November 30, 2020, in a different job setting where she is not driving the bus where she is constantly exposed to a large crowd of people. Because of Ms. Huddleston's medical conditions and age, she is at higher risk of infection for Covid-19 virus." [Id.]. The doctor's letter ended by saying, "If you need additional information, please feel free to contact our office." [Id.]. Plaintiff alleges that Defendant did not contact her physician to seek any additional information regarding her conditions and restrictions. [Id.].

On November 17, 2020, six days after submitting the doctor's letter, Plaintiff filled out and submitted to Defendant, along with the letter from her doctor, a Request of Job Assistance form she obtained from Defendant's Human Resource Department.

[Doc. 10 ¶ 25].  Plaintiff submitted this form to request a reasonable accommodation

for her alleged disability.  [Id.].  The form stated:

> My medical conditions restrict me from working in proximity to others
> because my conditions put me at high risk for contracting the COVID-19
> virus and becoming critically ill. . . .   My preexisting conditions
> compromise my immune system and substantially limit my ability to fight
> off disease and breathe properly. . . .   I am requesting a job assignment
> that I could work from home or in an isolated area.

[Id.].  Plaintiff alleges that Defendant did not ask her to provide additional information

to support her accommodation request.  [Id. ¶ 26].

Defendant MARTA instructed Plaintiff to apply for open positions she believed

she was qualified for.  [Doc. 10 ¶ 28].  Plaintiff applied for at least seven vacant

positions that met her doctor's recommended restrictions.  [Id. ¶¶ 28, 29].  According

to Plaintiff, although Defendant acknowledged that she was qualified for the posted

positions, it refused to interview her for the positions or reassign her to one of the

positions.  [Id.].  Plaintiff alleges that Defendant sent Plaintiff acknowledgments on

October 26 and November 8, 2021, that she was qualified for the vacant Dispatcher

and Customer Service positions.  [Id. ¶ 29].  But Defendant refused to place her in one

of the positions.  [Id.].  MARTA allegedly acknowledged that it did not consider

reassigning Plaintiff to a vacant position to accommodate her disability.  [Id. ¶ 30].

Plaintiff first requested an accommodation on November 11, 2020.  [Doc. 10 ¶

32].  Plaintiff alleges MARTA terminated her on August 17, 2022, after 21 months of

3

ignoring her multiple accommodation requests, communication attempts, short-term disability application, reassignment requests, and job applications. [Id.]. According to Plaintiff, Defendant denied her accommodation requests and did not propose any alternative accommodation or engage in the interactive process. [Id. ¶ 33]. Plaintiff asserts that she was capable of performing the essential functions of several vacant positions with or without an accommodation, but Defendant unreasonably delayed and created unnecessary obstacles for her return to work. [Id. ¶ 35]. Plaintiff alleges that she filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and was issued a Notice of Right to Sue by the EEOC on July 3, 2023. [Doc. 10 ¶¶ 14-18].

As previously noted, Plaintiff Huddleston filed the present employment discrimination action on October 5, 2023. [Doc. 1]. In Count One of Plaintiff's Amended Complaint, she asserts that Defendant failed to accommodate her disability and terminated her employment on the basis of disability in violation of the ADA. [Doc. 10 at 8-12, Count One]. In Count Two, Plaintiff asserts that Defendant failed to accommodate her disability and terminated her employment on the basis of disability in violation of the Rehabilitation Act. [Doc. 10 at 12, Count Two]. Plaintiff asserts in Count Three that Defendant subjected her to retaliation in violation of the ADA. [Doc. 10 at 12-14, Count Three]. And in Count Four, Plaintiff alleges that Defendant

subjected her to retaliation in violation of the Rehabilitation Act. [Doc. 10 at 14, Count Four]. Defendant MARTA has moved to dismiss Plaintiff's claims based on Rule 12(b)(6) for failure to state a claim upon which relief can be granted. [Doc. 13].

## II.   **LEGAL STANDARD**

When a motion to dismiss is brought pursuant to Rule 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff. See Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted). The Federal Rules of Civil Procedure include no requirement that a plaintiff detail the facts on which the plaintiff bases a claim. Rather, for a complaint to properly state a claim, it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted); accord Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-

83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (citations and internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level," i.e., they must do more than merely create a "'suspicion [of] a legally cognizable right of action,' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. at 555 (citations omitted) (emphasis omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  In addition, the allegations supporting a claim are to be made in separate paragraphs "each limited as far as practicable to a single set of circumstance."  Fed. R. Civ. P. 10(b).  The court's

focus is whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations and internal quotation marks omitted); accord T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) ("The purpose of these rules is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted . . . .") (Tjoflat, J., dissenting).

## III.   **DISCUSSION**

Plaintiff Huddleston alleges in her Amended Complaint that Defendant MARTA failed to accommodate her disability, terminated her employment on the basis of her disability, and subjected her to retaliation in violation of both the ADA and the Rehabilitation Act.  [Doc. 1, Counts One and Two].  Defendant contends that Plaintiff's ADA and Rehabilitation Act disability discrimination claims fail because she has not pled that she suffers from a disability.  [Doc. 13 at 6-15].  Defendant also argues Plaintiff's retaliation and discrimination claims fail because she was treated the same as every other employee.  [Id. at 16-19].  The Court will first address Defendant's argument that Plaintiff's Amended Complaint does not assert that she has a disability.

"The ADA prohibits employers from discriminating against 'a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" Batson v. Salvation Army, 897 F.3d 1320, 1326 (11th Cir. 2018) (quoting 42 U.S.C. § 12112(a)). "The Rehabilitation Act prohibits recipients of federal financial assistance from discriminating against individuals with disabilities." Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees, 507 F.3d 1306, 1310 (11th Cir. 2007) (citing Bragdon v. Abbott, 524 U.S. 624, 632 (1998)).  The relevant language of the Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  "Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases[.]" Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000) (citing 29 U.S.C. § 794(d)).[1]

"To state a discrimination claim under the ADA, a plaintiff must allege sufficient facts to plausibly suggest (1) that [she] suffers from a disability, (2) that [she] is a

---

[1] The Court will refer only to Plaintiff's ADA claims throughout the remainder of this Report and Recommendation with the understanding that the same standards apply to her Rehabilitation Act claims.

8

qualified individual, and (3) that a covered entity discriminated against [her] on account of [her] disability." Surtain v. Hamlin Terrace Foundation, 789 F.3d 1239, 1245-46 (11th Cir. 2015) (citation and internal quotation marks omitted) (clarifying that the Iqbal-Twombly pleading standard governs the motion to dismiss analysis). Defendant argues that Plaintiff's Amended Complaint does not set forth sufficient allegations showing that she meets the ADA's definition of disabled. [Doc. 13 at 6-15]. Defendant contends that Plaintiff merely asserts that she had a fear of exposure to COVID-19 because of underlying conditions. [Id.]. And according to Defendant, Plaintiff's fear of exposure to COVID-19 is not a "disability" under the ADA. [Id.].

Plaintiff's Amended Complaint, as noted *supra*, asserts that she worked for MARTA as a Bus Operator which required her to come in close contact with passengers entering and exiting the bus. [Doc. 10 ¶¶ 20, 21]. Plaintiff alleges that on March 16, 2020, she took medical leave because her asthma, diabetes, and rheumatoid arthritis put her at a high-risk for serious medical consequences related to contracting COVID-19. [Id. ¶ 22]. Plaintiff submitted a doctor's letter to MARTA on November 11, 2020, stating, "Ms. Huddleston may be allowed to return to work, on November 30, 2020, in a different job setting where she is not driving the bus where she is constantly exposed to a large crowd of people. Because of Ms. Huddleston's medical conditions and age,

she is at higher risk of infection for Covid-19 virus." [Id.].  On November 17, 2020,

Plaintiff submitted to Defendant a Request of Job Assistance form which stated:

> My medical conditions restrict me from working in proximity to others
> because my conditions put me at high risk for contracting the COVID-19
> virus and becoming critically ill. . . .   My preexisting conditions
> compromise my immune system and substantially limit my ability to fight
> off disease and breathe properly. . . .   I am requesting a job assignment
> that I could work from home or in an isolated area.

[Id. ¶ 25].  The Court finds that Plaintiff has offered sufficient factual allegations to

plausibly suggest that she suffers from a disability.

In determining whether a plaintiff has a disability under the ADA, a court must

first determine whether the plaintiff has an impairment.  The EEOC defines a physical

impairment as "[a]ny physiological disorder or condition, cosmetic disfigurement, or

anatomical loss affecting one or more body systems, such as neurological,

musculoskeletal, special sense organs, respiratory (including speech organs),

cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic,

lymphatic, skin, and endocrine[.]"  29 C.F.R. § 1630.2(h)(1).  Plaintiff Huddleston

alleges in the Amended Complaint that she has asthma, diabetes, and rheumatoid

arthritis.  [Doc. 10 ¶¶ 22, 25].  The Court finds that these conditions are impairments

under the ADA because Plaintiff has plausibly suggested that they is a "physiological

disorder or condition . . . affecting one or more body systems, such as . . . respiratory,

. . . immune, [and] circulatory[.]"  29 C.F.R. § 1630.2(h)(1).

10

The next step requires the Court to determine whether Plaintiff's asthma, diabetes, and/or rheumatoid arthritis impairments rise to the level of "disability" under the ADA.  To make this showing, Plaintiff must offer sufficient factual allegations to plausibly suggest that at least one of her impairments "substantially limits one or more major life activities[.]"  42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  In addition, the ADA Amendments Act of 2008 ("ADAAA") amended the ADA to further provide that, for the purpose of establishing the existence of a disability, "a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system[.]"  42 U.S.C. § 12102(2)(B); accord 29 C.F.R. § 1630.2(i)(1)(ii) ("Major life activities include, but are not limited to: . . .The operation of a major bodily function, including functions of the immune system[.]").  "Congress made significant changes to the ADA by enacting the ADA Amendments Act of 2008," and "[t]hese amendments convey that an extensive analysis is not required to determine whether an individual's impairment is a disability under the ADA."  EEOC v. St. Joseph's Hospital, Inc., 842 F.3d 1333, 1343 (11th Cir. 2016) (citation omitted).

Plaintiff's Amended Complaint asserts that she has asthma, diabetes, and rheumatoid arthritis.  [Doc. 10 ¶ 22].  The Complaint also alleges that both Plaintiff and her doctor believed that her medical conditions put her at a high-risk for serious medical consequences related to contracting COVID-19.  [Id. ¶¶ 22, 24].  Finally, in a form requesting an accommodation, Plaintiff informed Defendant's Human Resource Department that her medical "conditions compromise [her] immune system and substantially limit [her] ability to fight off disease and breathe properly."  [Id. ¶ 25].  These allegations are sufficient to survive the motion to dismiss.

As previously noted, "[w]hen it enacted the ADAAA, Congress indicated that one of its purposes was to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."  Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1268 (11th Cir. 2014) (citation and internal quotation marks omitted).  Moreover, the relevant regulation provides that the "term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA."  29 C.F.R. § 1630.2(j)(1)(i).  The undersigned concludes Plaintiff has alleged facts which plausibly suggest that her asthma, diabetes, and/or rheumatoid arthritis are actual disabilities under the ADA because they "substantially limit" the major life activity of breathing and the functioning of her immune system.

12

Defendant next argues Plaintiff's claims of retaliation and disability discrimination must be dismissed because she was treated the same as every other employee at MARTA. [Doc. 13 at 16-19]. Defendant contends that Plaintiff made a demand for a job that would allow her to work from home, and "this demand was made only because of her generalized fear of contracting COVID." [Id. at 16-17]. Defendant also argues Plaintiff does not "assert that MARTA's policy of not providing the ability to work from home to those without cognizable disabilities was not applied equally to all MARTA employees." [Id. at 17]. According to Defendant, because "MARTA did not consider a generalized fear of exposure to COVID-19 a disability, . . . Plaintiff was treated no differently than any other MARTA employee." [Id.].

For the reasons previously discussed, the Court rejects Defendant's re-framing of Plaintiff's disability as a "generalized fear of exposure to COVID-19." [Doc. 13 at 17]. Plaintiff's Amended Complaint asserts that she has asthma, diabetes, and rheumatoid arthritis and these impairments compromise her immune system and make it difficult for her to breathe. [Doc. 10 ¶¶ 22, 24, 25]. Nowhere in Plaintiff's Amended Complaint does she assert that her alleged disability was a generalized fear of exposure to COVID-19.

Furthermore, although Defendant argues that dismissal is warranted on Plaintiff's disability claim because "MARTA did not consider" her impairments to be

a disability, Defendant has cited to no caselaw establishing that an employer's subjective belief about whether an employee has a disability is determinative or even relevant to the evaluation of an employee's disability discrimination claim. [Doc. 13 at 17]. A claimant bringing a disability claim "must allege that she was a 'qualified individual' who suffered an adverse employment action because of her 'disability' as those terms are defined by the ADA." EEOC v. STME, LLC, 938 F.3d 1305, 1314 (11th Cir. 2019) (citing Mazzeo, 746 F.3d at 1267-68). The ADA's definition of "discriminate" includes a failure to make reasonable accommodations to the limitations of an individual with a disability. See 42 U.S.C. § 12112(b)(5)(A). "The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable." Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000). Thus, "[t]he plaintiff bears the burden of identifying a reasonable accommodation that would allow a qualified individual to perform the job, and an employer is not required to accommodate an employee in any manner in which the employee desires." Gilliard v. Georgia Dep't of Corrections, 500 F. App'x 860, 868 (11th Cir. 2012) (citing Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285-86 (11th Cir. 1997)). Plaintiff has met this burden.

14

Plaintiff's Amended Complaint alleges that MARTA instructed her to apply for open positions she believed she was qualified for. [Doc. 10 ¶ 28]. Although Plaintiff applied for at least seven such positions that were vacant and met her doctor's recommended restrictions, Defendant refused to interview her or reassign her to one of the positions. [Id. ¶¶ 28, 29]. Plaintiff alleges that Defendant sent her acknowledgments on October 26 and November 8, 2021, that she was qualified for the vacant Dispatcher and Customer Service positions, but Defendant refused to place her in one of the positions and acknowledged that it did not consider reassigning her to a vacant position to accommodate her disability. [Id. ¶¶ 29, 30]. The Amended Complaint asserts that after Plaintiff made numerous requests for accommodations, Defendant eventually terminated her employment on August 17, 2022. [Id. ¶ 32]. "[A]n employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." Holly v. Clairson Industries, L.L.C., 492 F.3d 1247, 1262 (11th Cir. 2007) (emphasis in original). Although unclear, it appears Defendant implicitly acknowledges that it made no effort to offer Plaintiff a reasonable accommodation as Defendant asserts that it treated her "no differently than any other MARTA employee." [Doc. 13 at 17]. In addition, as Plaintiff notes, Defendant does not argue that it can show undue hardship. [Doc. 14 at

15; Doc. 13]. In light of these facts, the undersigned concludes Plaintiff has sufficiently asserted a disability discrimination claim.

A plaintiff bringing a retaliation claim under the ADA must allege sufficient facts to plausibly suggest that "(1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two." Frazier-White v. Gee, 818 F.3d 1249, 1258 (11th Cir. 2016). The protected expression "element may be met by a request for a reasonable accommodation." Id. Defendant argues Plaintiff did not engage in protected activity. [Doc. 13 at 17]. This is incorrect.

Plaintiff asserts in her Amended Complaint that she asked MARTA to make a reasonable accommodation to her alleged disability. [Doc. 10 ¶ 25]. Plaintiff alleges that on November 17, 2020, she submitted to Defendant a Request of Job Assistance form she obtained from Defendant's Human Resource Department to request a reasonable accommodation. [Id.]. The form stated:

> My medical conditions restrict me from working in proximity to others because my conditions put me at high risk for contracting the COVID-19 virus and becoming critically ill. . . . My preexisting conditions compromise my immune system and substantially limit my ability to fight off disease and breathe properly. . . . I am requesting a job assignment that I could work from home or in an isolated area.

[Id.]. In contrast to Defendant's assertion that Plaintiff's "demand" for another job "was made only because of her generalized fear of contracting COVID," Plaintiff

16

specifically explained that her medical conditions limit her ability to fight disease and breathe properly. [Id.; Doc. 13 at 17]. And this occurred after Plaintiff informed Defendant that her asthma, diabetes, and rheumatoid arthritis put her at a high-risk for serious medical consequences related to contracting COVID-19 and after she had submitted a letter from her doctor explaining that because of her "medical conditions and age, she is at higher risk of infection for Covid-19 virus." [Doc. 10 ¶ 22]. Because Plaintiff's Amended Complaint asserts that she made a request for a reasonable accommodation, she has plausibly alleged that she engaged in statutorily protected expression. See Frazier-White, 818 F.3d at 1258.

Moreover, Plaintiff alleged that although she made requests for reasonable accommodations and applied for numerous vacant positions, Defendant did not engage in the interactive process and refused to interview her for any of the positions she applied for. [Doc. 10 ¶¶ 28-33]. Plaintiff also alleges Defendant did not consider reassigning her to a vacant position and ultimately terminated her employment in August 2022 after she had made repeated requests for accommodations. [Id.]. Based on these factual allegations, the Court finds that Plaintiff's disability discrimination claims, her failure to accommodate claims, and her retaliation claims under both the ADA and the Rehabilitation Act are able to survive Defendant's motion to dismiss.

## IV.   <u>CONCLUSION</u>

In sum, the undersigned concludes at this stage of the litigation that Plaintiff's Amended Complaint [Doc. 10] "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Iqbal</u>, 556 U.S. at 678 (citation and internal quotation marks omitted).   Therefore, it is **RECOMMENDED** that Defendant's Motion to Dismiss [Doc. 13] be **DENIED**.   If the District Court adopts the recommendation of the undersigned, it is **FURTHER RECOMMENDED** that Defendant's answer or other response to the Plaintiff's Amended Complaint be due within fourteen (14) days of the date of the District Court's Order addressing this Report and Recommendation.

**SO REPORTED AND RECOMMENDED**, this  13  day of May, 2024.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE