## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

VICTORIA HUDDLESTON,

    Plaintiff,

            v.

METROPOLITAN ATLANTA RAPID
TRANSIT AUTHORITY,

    Defendant.

Civil Action No.
1:23-cv-04552-SDG-LTW

### OPINION AND ORDER

This matter is before the Court on the Final Report and Recommendation (R&R) entered by United States Magistrate Judge Linda T. Walker, which recommends that the Defendant Metropolitan Atlanta Rapid Transit Authority's (MARTA) motion to dismiss be denied because Plaintiff Victoria Huddleston's Amended Complaint states a claim.

For the following reasons, undersigned **ADOPTS in part** and **DECLINES in part** the R&R [ECF 16] as the Order of this Court, and **DENIES in part and GRANTS in part** the motion to dismiss [ECF 13]. Specifically, the Court denies the motion to dismiss as to Counts One and Two but grants the motion as to Counts Three and Four.

1

## I.  BACKGROUND

The following facts are accepted as true for purposes of this Order.[1] MARTA employed Huddleston for 22 years as a bus driver.[2] In that position, Huddleston was required to come into close contact with the public.[3] On March 16, 2020, Huddleston took medical leave because her asthma, diabetes, and rheumatoid arthritis put her at high-risk of contracting COVID-19.[4] Eight months later, Huddleston submitted to MARTA a doctor's note releasing her to work, but in a job setting that did not require her to come in close contact with the public.[5] The doctor's note read, "Ms. Huddleston may be allowed to return to work, on November 30, 2020, in a different job setting where she is not driving the bus where she is constantly exposed to a large crowd of people. Because of Ms. Huddleston's medical condition and age, she is at higher risk of infection for Covid-19 virus."[6] MARTA did not contact Huddleston's doctor for additional

---

[1]  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]  ECF 10, ¶ 20.

[3]  *Id.* ¶ 21.

[4]  *Id.* ¶ 22.

[5]  ECF 10, ¶ 24.

[6]  *Id.*

information.[7] On November 17, 2020, Huddleston submitted a Request of Job Assistance form to MARTA, requesting a reasonable accommodation.[8] She wrote, "My medical conditions restrict me from working in proximity to others because my conditions put me at high risk for contracting the COVID-19 virus and becoming critically ill…. My preexisting conditions compromise my immune system and substantially limit my ability to fight off disease and breath[e] properly…. I am requesting a job assignment that I can work from home or in an isolated area."[9]

MARTA instructed Huddleston to apply for open positions she believed she was qualified for, which Huddleston did, but MARTA did not interview her for any of those positions.[10] MARTA admits that Huddleston was qualified for two of the seven jobs she applied for, but acknowledged that it did not consider reassigning Huddleston.[11] Over the next 21 months, Huddleston made more accommodation requests, phone calls, emails, applications and reassignment

---

[7]   *Id.* ¶ 24.

[8]   *Id.* ¶ 25.

[9]   *Id.*

[10]   *Id.* ¶ 28.

[11]   *Id.* ¶¶ 29–30.

requests, up until August 17, 2022, when MARTA terminated Huddleston's employment.[12]

Huddleston filed this case on October 5, 2023, bringing four claims in her amended complaint.[13] In Count One of the amended pleading, Huddleston asserts that MARTA discriminated against and failed to accommodate her under the Americans with Disabilities Act (ADA).[14] In Count Two, she asserts that MARTA discriminated against and failed to accommodate her under the Rehabilitation Act.[15] Count Three raises a retaliation claim under the ADA, and Count Four does the same under Section 504 of the Rehabilitation Act.[16] Defendant thereafter filed the instant 12(b)(6) motion to dismiss.[17]

## II.    LEGAL STANDARD

A party challenging a report and recommendation issued by a federal magistrate judge must file written objections that specifically identify the portions of the proposed findings and recommendations to which an objection is made and must assert a specific basis for the objection. *United States v. Schultz*, 565 F.3d 1353,

---

[12]   *Id.* ¶ 32.

[13]   ECF 10.

[14]   *Id.* ¶¶ 36–58.

[15]   *Id.* ¶ 59–61.

[16]   *Id.* ¶ 62–75.

[17]   ECF 13.

1361 (11th Cir. 2009). The district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).

The district court has broad discretion in reviewing a magistrate judge's report and recommendation. It may consider an argument that was never presented to the magistrate judge, and it may also decline to consider a party's argument that was not first presented to the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1290–92 (11th Cir. 2009).

## III.   DISCUSSION

MARTA moves to dismiss the amended complaint in its entirety.[18] The R&R recommends denying the motion, concluding that Huddleston adequately alleged she is disabled and that MARTA retaliated against her.[19] MARTA objects, arguing first that the R&R incorrectly concluded that Huddleston is disabled.[20] Second, it argues that, even assuming she is disabled, it accommodated her disability.[21] Finally, it argues that the R&R erred in concluding that Huddleston has made out

---

[18]   ECF 13, at 6.

[19]   ECF 16, at 18.

[20]   ECF 10, at 7.

[21]   *Id.* at 10.

a claim for retaliation.[22] The Court concludes that Huddleston has stated claims for discrimination, but not retaliation.

### A.   Discrimination under the ADA[23]

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that she (1) is disabled, (2) is a "qualified individual," and (3) was discriminated against because of her disability. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). Assuming a plaintiff is disabled and qualified—or if there is a dispute of fact on either issue—the Court then asks whether the employer provided a reasonable accommodation for her disability, since unlawful discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless doing so "would impose an undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A).

---

[22]   ECF 18, at 14.

[23]   "The standard for determining liability under the Rehabilitation Act is the same as that under the [ADA]." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Thus, if Plaintiff has stated a claim under the ADA, she has also stated a Rehabilitation Act claim.

1.    **Judge Walker correctly concluded that Huddleston is disabled because she suffers from asthma, diabetes, and rheumatoid arthritis.**

MARTA first objects on the ground that Huddleston failed to allege she is disabled because COVID-19 is a transitory impairment instead of a disability.[24] In support, MARTA relies on *McCone v. Exela Technologies, Incorporated*, 2022 U.S. Dist. LEXIS 45734, *4 (M.D. Fla. 2022) for the proposition that "being infected with COVID-19, standing alone, does not meet the ADA's definitions of disability or impairment." But this argument misses the mark: the Amended Complaint alleges that Huddleston's disabilities stem from asthma, diabetes, and rheumatoid arthritis—not COVID-19.[25] MARTA acknowledges that Huddleston's illnesses qualify as disabilities.[26] On that front, MARTA argues that these disabilities did not prevent Huddleston from doing her job in the past. But that is irrelevant to Huddleston's prima facie case. She need only allege that "(1) [s]he has a disability, (2) [s]he is a 'qualified individual'…, and (3) the defendant unlawfully discriminated against [her] because of the disability." *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000). Undersigned agrees with Judge Walker that Huddleston sufficiently pleaded that she suffers from a disability.

---

24    ECF 18, at 7.

25    ECF 10, at 5.

26    ECF 18, at 9.

### 2.      Judge Walker correctly concluded that Huddleston stated a claim for failure to reasonably accommodate.

MARTA next argues that it implemented reasonable accommodations and thus, Huddleston's claim for failure to reasonably accommodate her disability must fail.[27] A defendant can defeat a plaintiff's discrimination claim if it demonstrates that it provided reasonable accommodations. "Failing to provide a reasonable accommodation to the plaintiff is a form of discrimination under the ADA." *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016). "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential functions." *Id.* at 1256. "The ADA may require the employer to 'reassign,' i.e., transfer, the disabled employee to a vacant position as a reasonable accommodation." *Id.*

Most importantly for the instant case, whether an entity provided appropriate accommodations for a disabled individual "is inherently fact-intensive." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 342 (11th Cir. 2012); *see also Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1085 (11th Cir. 2007) (quoting *Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1527 (11th Cir. 1997)) ("The reasonable-modification inquiry in Title II-ADA cases is 'a highly fact-specific inquiry.'"). Circuit courts have held that this inquiry is often inappropriate for summary

---

[27]   *Id.* at 9.

judgment, much less for a motion to dismiss. *See Liese*, 701 F.3d at 342 (citing *Chisolm v. McManimon*, 275 F.3d 315 (3d Cir. 2001); *Randolph v. Rodgers*, 170 F.3d 850 (8th Cir. 1999); *Duffy v. Riveland*, 98 F.3d 447 (9th Cir. 1996)).

Here, although MARTA has identified accommodations it made generally to help mitigate the spread of COVID-19, such as installing improved filtration systems and barriers between employees and the public,[28] Huddleston alleges that she required different and additional accommodations because of her particular disabilities. A general policy designed to protect the public at large does not necessarily equate to reasonable accommodations for a disabled employee with heightened vulnerability. Huddleston has met her pleading burden by identifying accommodations she believes were reasonable given her unique vulnerabilities, including a job assignment in which she could work from home or in an isolated area.[29] Whether MARTA's actions in fact constitute reasonable accommodations involves factual disputes that cannot be decided at the motion to dismiss stage. MARTA's motion to dismiss the disability discrimination claims is denied.

### B.   Huddleston did not state a claim for retaliation.

MARTA further argues that Judge Walker erred by concluding that Huddleston had stated a claim for retaliation. Specifically, MARTA argues that,

---

[28]   ECF 13, at 5.
[29]   ECF 10, ¶ 25.

because it treated Huddleston the same as all other employees and allowed her to remain employed for two years following her protected activity, her retaliation claim must fail.[30] Undersigned declines to adopt the R&R with respect to allowing the retaliation claims to proceed, but for more fundamental reasons.

As MARTA points out, "the purpose of retaliation claims is to prevent employers from taking actions that would cause another employee not to engage in a protected activity."[31] A retaliation claim is thus designed to punish an employer that penalizes an employee *because* the employee tried to remedy or report discriminatory activity. To succeed in her retaliation claim, Huddleston must show (1) she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) a causal connection between them. *McCreight v. AuburnBank*, No. 22-12577, 2024 U.S. App. LEXIS 23859, at *32 (11th Cir. Sep. 19, 2024); *see also Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). In other words, a plaintiff must allege that she would not have suffered an adverse employment action *but for* her engagement in protected activity. *Jackson-Crawford v. Sch. Bd. of Seminole Cty.*, No. 23-11290, 2024 U.S. App. LEXIS 16933, at *17 (11th Cir. July 11, 2024).

---

[30]   ECF 18, at 11.

[31]   *Id.* at 12.

In undersigned's view, the threshold question is whether Huddleston has sufficiently alleged that her termination was connected to her protected activity—requesting an accommodation. The amended complaint simply pleads that she requested accommodations on various occasions, first on November 11, 2020, was ignored for 21 months, and was then terminated on August 17, 2022. The closest temporal connection Huddleston can draw is her January 19, 2021 request for an accommodation and her firing on August 17, 2022—over a year and half later. Huddleston also alleges that the bus supervisor threatened to fire her, but admits that the threat was based on her failure to return to work, not her requests for accommodations.[32] There is nothing in the amended complaint drawing a causal connection between the protected activity and her termination. At bottom, even if everything Huddleston claims is true, the complaint still lacks the necessary causal connections. Huddleston's retaliation claim must fail.

## IV.   CONCLUSION

The Court **ADOPTS in part** and **DECLINES in part** the R&R [ECF 16] as the Order of this Court, and **DENIES in part and GRANTS in part** MARTA's motion to dismiss [ECF 13]. Counts Three and Four of the Amended Complaint are **DISMISSED**. MARTA's answer to the remaining portions of Huddleston's

---

[32]   ECF 10, at 67–68.

Amended Complaint, specifically Counts One and Two, is due on or before **October 14, 2024.**

    **SO ORDERED** this 30th day of September 2024.

Steven D. Grimberg
United States District Judge