IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN  DISTRICT OF GEORGIA
ATLANTA DIVISION

VICTORIA HUDDLESTON

    Plaintiff,

v.

METROPOLITAN ATLANTA RAPID
TRANSIT AUTHORITY

    Defendant.

Civil Action No.:

1:23-cv-04552-SDG-LTW

JURY TRIAL DEMANDED

## SECOND  AMENDED COMPLAINT

COMES NOW Plaintiff, Victoria Huddleston, by and through her undersigned counsel and files a second amended complaint in this lawsuit against Defendant, Metropolitan Atlanta Rapid Transit Authority ("MARTA"), an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991 and Section 504 of the Rehabilitation Act, as amended ("Rehab Act"), 29 U.S.C. § 794 *et seq* to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Victoria Huddleston ("Huddleston"), who was adversely affected by them. MARTA discriminated against Huddleston when it denied her

1

request for a reasonable accommodation, retaliated against her for participating in protected activity and terminated her employment because of her disabilities.

The amended portions of this complaint are featured in paragraphs 63 through 85. All other paragraphs remain the same as Plaintiff's First Amended Complaint filed on January 17, 2024 (See Doc No. 10). Plaintiff incorporates herein by reference all attachments filed with Plaintiff's First Amended Complaint. (See Doc No. 10.2 - 10.4)

## INTRODUCTION

This lawsuit was filed to hold MARTA for its unlawful denial of Ms. Huddleston's request for disability accommodations, as well as its discriminatory and retaliatory termination of Ms Huddleston. She was a dedicated MARTA employee for over two decades. After she filed an EEOC charge detailing MARTA's failure to accommodate her disability and other discriminatory conduct, MARTA retaliated by refusing to process her short-term disability application, refusing to interview her for a number of open positions that they acknowledged her to be qualified for, and repeatedly threatening to terminate her employment. After nearly two years of employing avoidance and delay tactics to circumvent accommodating Ms. Huddleston's disability, MARTA further retaliated by terminating her employment during an active EEOC investigation.

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the federal claims asserted in this action under the ADA and Rehab Act.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as Defendant conducts business in this District and the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## II. PARTIES

3. Plaintiff, Victoria Huddleston (hereinafter, "Plaintiff" or "Ms. Huddleston") is a resident of Douglas County, Georgia (within this District), who was employed by MARTA as a Bus Operator from June 18, 2001 through her discriminatory and retaliatory termination on August 17, 2022.

4. At all times relevant to this suit, Ms. Huddleston was a qualified individual with a disability as defined by the ADA, 42 U.S.C. § 12102(1) and 12111(8), and the Rehab Act, 29 U.S.C. § 705(20).

5. Ms. Huddleston was a person with a disability under the ADA because she has physical and/or mental impairments that substantially limit one or more of her major life activities, because she has a record of impairment, and/or

because Defendant MARTA regarded her as having an impairment. 42 U.S.C. § 12102(1).

6. Ms. Huddleston was a person with a disability under the Rehab Act because she has physical and/or mental impairments that resulted in a substantial impediment to her employment, and/or because Defendant MARTA regarded her as having an impairment. 29 U.S.C. § 705(20).

7. Defendant MARTA is a Georgia Corporation subject to this Court's jurisdiction because its headquarters and principal offices are located in Fulton County at 2424 Piedmont Road NE, Atlanta, Georgia 30324, and because it transacts business, maintains facilities, and conducts operations within Fulton, Clayton and Dekalb, Counties, Georgia.

8. Defendant MARTA is an "employer" within the meaning of the ADA, as incorporated by the Rehab Act, 29 U.S.C. § 794(d), because it engages in commerce or in an industry affecting commerce and employs more than 15 employees for each working day in each of 20 calendar weeks in the current or preceding year. 42 U.S.C. § 12111(5).

9. Defendant MARTA is a "public entity" subject to Title II of the ADA, 42 U.S.C. § 12131 et seq., because it is a public transportation provider that operates a fixed route system.  42 U.S.C. §§ 12141, 12143.

10. Defendant MARTA is a "program or activity" under the Rehab Act because it is a State or local entity that receives federal financial assistance. 29 U.S.C. § 794(b).

11. As a recipient of federal financial assistance, Defendant MARTA is subject to the requirements of the Rehab Act, including the requirement that it not subject otherwise qualified individuals with disabilities to discrimination on the basis of disability.

12. Defendant MARTA may be served with process via service on its Registered Agent, Elizabeth M. O'Neill, at 2424 Piedmont Road NE, Atlanta, GA 30324, or through MARTA's General Manager and CEO, Collie Greenwood, at MARTA Headquarters, 2424 Piedmont Avenue, Atlanta, GA 30324, and is subject to the jurisdiction of this court.

13. Venue is proper in this Court because the actions alleged in this lawsuit occurred in the District.

### III. <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

14. Ms. Huddleston filed charges of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the occurrence of the acts of which she complains.

15. On September 13, 2022, the EEOC issued a Letter of Determination finding reasonable cause to believe that the ADA had been violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

16. The EEOC engaged in communications with Defendant to provide it with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

17. On July 7, 2023, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

18. On July 7, 2023, the EEOC issued Ms. Huddleston a Notice of Right to Sue related to

her charge of discrimination against Defendant, which she received on July 10, 2023.

19. Ms. Huddleston brings this suit within 90 days of the receipt of her Notice of Right to Sue.

## IV. STATEMENT OF FACTS

20. Ms. Huddleston was employed for twenty-two (22) years by Defendant as a "Bus Operator" at Defendant's Perry Boulevard Maintenance Garage, located at 1600 Perry Blvd NW, Atlanta, GA 30318.

21. Ms. Huddleston, a long-term Bus Operator, had duties that required her to come in close contact with passengers entering and exiting the bus.

22. On March 16, 2020, Ms. Huddleston took medical leave because her disabilities (Asthma, Diabetes, and Rheumatoid Arthritis) put her at a high-risk for serious medical consequences related to contracting COVID-19.

23. Ms. Huddleston's bus route was in Fulton County, which has reported 1,984 deaths from COVID-19, a number of which included MARTA employees.

24. On November 11, 2020, Ms. Huddleston submitted a doctor's letter releasing her to return to work on November 30, 2020, with restrictions. Her doctor specifically recommended that " Ms. Huddleston may be allowed to return to work, on November 30, 2020, in a different job setting where she is not driving the bus where she is constantly exposed to a large crowd of people. Because of Ms. Huddleston's medical conditions and age, she is at higher risk of infection for Covid-19 virus." See Attachment A - Plaintiff's Physician Letter.  The letter ended with the invitation that "[if] you need

additional information, please feel free to contact our office." Defendant did not contact Ms. Huddleston's physician to seek any additional information regarding her conditions and restrictions.

25. On November 17, 2020, Plaintiff filled out and submitted to Defendant, along with the letter from her doctor, a Request of Job Assistance form she obtained from Defendant's Human Resource Department to request a reasonable accommodation. More specifically, the form stated, "My medical conditions restrict me from working in proximity to others because my conditions put me at high risk for contracting the COVID-19 virus and becoming critically ill. . . . My preexisting conditions compromise my immune system and substantially limit my ability to fight off disease and breathe properly. . . . I am requesting a job assignment that I could work from home or in an isolated area." See Attachment B - EEOC Charge Ex. C.

26. Defendant did not ask Ms. Huddleston to provide additional information to support her accommodation request.

27. Defendant was well aware that "[t]he ADA lists as examples of reasonable accommodations "job restructuring, part-time or modified work schedules, **reassignment to a vacant position**, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B); see 29 C.F.R. §

1630.2( o)(2)" *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) [emphasis added].

28. As a pure delay tactic, MARTA instructed Ms. Huddleston to apply for open positions she believed she was qualified for.  She futilely applied for several vacant positions that met her doctor's recommended restrictions.  Despite acknowledging that she was qualified for the posted positions, MARTA refused to interview her for the positions or reassign her to one of the positions.

29. Defendant formally acknowledged that Ms. Huddleston was qualified for at least 2 of the at least 7 positions she applied for, however MARTA refused to place her in one of the positions.   Defendant should have immediately reassigned Plaintiff to a vacant position after it sent Plaintiff acknowledgments on November 8, 2021 and October 26, 2021 that she was qualified for the vacant Dispatcher and Customer Service positions.  See Attachment  C - Qualification Acknowledgments

30. MARTA acknowledged that it did not consider reassigning Ms. Huddleston to a vacant position to accommodate her disability.

31. MARTA purposely delayed her return to work after her doctor authorized her to return to work with some restrictions, to avoid providing her reasonable accommodation.

32. Ms. Huddleston first requested an accommodation on November 11, 2020. After 21 months of ignoring her multiple accommodation requests, phone calls, voice messages emails, doctor's notes, short-term disability application, reassignment requests and job applications, MARTA terminated Ms. Huddleston on August 17, 2022.

33. Defendant denied Ms. Huddleston's accommodation request and did not propose any alternative accommodation or engage in any interactive process with Ms. Huddleston.

34. Defendant has not articulated any undue hardship that Ms. Huddleston's requested accommodation would pose.

35. Ms. Huddleston was capable of performing the essential functions of several vacant positions with or without an accommodation, but Defendant unreasonably delayed and created unnecessary obstacles for her return to work.

## V.  CAUSES OF ACTION

### COUNT ONE
**Discrimination and Failure To Accommodate Under ADA**

36. Plaintiff repeats, re-alleges and reiterates the foregoing allegations set forth in the preceding paragraphs, as set forth herein and states:

37. Plaintiff is a qualified individual with a disability who was denied accommodation of her known disability.

38. MARTA is a public entity who refused to provide Plaintiff a reasonable accommodation and has an accommodation policy that disproportionately impacts individuals with disabilities.

### *Failure to Accommodate*

39. Plaintiff timely requested accommodation was reasonable and she was open to suggestions.

40. Defendant unreasonably denied Plaintiff's requested accommodation.

41. Defendant failed to conduct a reasonable investigation into Plaintiff's requested accommodation and failed to meaningfully interact with or engage with her or anyone on her behalf related to the requested accommodation.

42. Defendant failed to grant the accommodation to Plaintiff that would have allowed her to perform the essential functions of her work, with or without an accommodation.

### *Discriminatory Termination*

43. Defendant terminated Plaintiff because of her disabilities and/or need for a reasonable accommodation.

44. The effect of the practice(s) complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her disabilities.

45. The unlawful employment practices complained of above were intentional.

46. MARTA did not offer any explanation for denying Plaintiff's accommodation request until well after she filed an EEOC charge, and its suggestion that "modified duty positions" can only be reserved for employees with on-the-job injuries was both false and legally insufficient to establish an undue hardship. *See Severson v. Heartland Woodcraft*, Inc., No. 14-C-1141, at *17 (E.D. Wis. Nov. 12, 2015) ("ADA requires an employer to consider as a reasonable accommodation for a disabled employee, transferring or reassigning that employee to a vacant position for which he or she is qualified . . . even if the position is normally reserved for employees recovering from workplace injuries."

47. An employer's obligation to provide reasonable accommodation under the ADA is not limited to work-related injuries. The ADA's definition of disability extends to work and non-work injuries and illnesses. An employer

who refuses to accommodate an employee's non-work injury because it's not work-related clearly violates the ADA.

48. The ADA and the special circumstances of this case required that MARTA reassign Plaintiff to a vacant position within her medical restrictions, as a reasonable accommodation. *See U.S. Equal Emp't Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1346 (11th Cir. 2016) (even when employer is found to have a legitimate nondiscriminatory policy to enforce, "an employee can still prevail by showing that special circumstances warrant a finding that the accommodation is reasonable under the particular circumstances of the case.")

49. Even if Ms. Huddleston had requested a modified duty assignment (which she did not), an employer can not simply reject proposed accommodations without offering other suggestions or expressing a willingness to discuss possible accommodations. "An employer cannot sit behind a closed door and reject the employee's requests for accommodation without explaining why the requests have been rejected or offering alternatives." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 806 (7th Cir. 2005).

50. Defendant failed to provide Plaintiff with a reasonable accommodation.

13

51. Defendant failed to engage in any meaningful conversation to explore reasonable accommodation options.

52. Prior to her termination on August 17, 2022, Defendant willfully, knowingly and/or recklessly violated the Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. (ADA) and Section 504 of the Rehabilitation Act, as amended ("Rehab Act"), 29 U.S.C. § 794 et seq, when it denied Plaintiff the opportunity to return to work for nearly 29 months, despite Defendant's written acknowledgments that she was qualified for a number of vacant positions that could have accommodated her doctor's restrictions. *See Crutcher v. Mobile Housing Board, Civil Action 04-0499-WS-M, at \*26 (S.D. Ala. Oct. 20, 2005) (*delay of more than a year to approve plaintiff's requests may constitute a failure to provide reasonable accommodation within the meaning of the ADA."*)

53. Upon information and belief, Plaintiff was the best qualified applicant for a number of the vacant positions, some of which she had previously occupied in the past and received high praise for her good performance. Plaintiff's non-selection for the position, in favor of less qualified persons with no disabilities or persons who did not require a disability accommodation, was

discriminatory on the basis of her disability and retaliatory as a result of her persistent advocacy for equitable treatment regarding her disability.

54. The EEOC correctly determined that "[t]he evidence established that Respondent failed to provide evidence to demonstrate that accommodating Plaintiff would have caused an undue hardship on its operations."

55. Plaintiff is entitled to damages, including back pay and lost benefits, front pay and/or reinstatement, compensatory/emotional damages, attorney's fees and costs of litigation, and all other relief recoverable under the ADA.

56. As a direct and proximate cause of MARTA's intentional discrimination and retaliation, Plaintiff has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and social security, all in an amount to be established at trial.

57. MARTA's actions have caused and continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

58. Accordingly, Plaintiff is entitled to equitable and monetary relief for MARTA's violation of her rights under the ADA.

**COUNT TWO**
**Discrimination and Failure To Accommodate - Rehabilitation Act**

59. Plaintiff repeats, re-alleges and reiterates the foregoing allegations set forth in the preceding paragraphs, as well as paragraphs 63 through 85 set forth below and states:

60. Plaintiff is a qualified individual with a disability who was excluded from participation in or denied the benefits of a public program or service, and the exclusion or discrimination was due to their disability.

61. MARTA is a public entity who refused to provide Plaintiff a reasonable accommodation and has an accommodation policy that disproportionately impacts individuals with disabilities

**COUNT THREE**
**Retaliation in Violation of the ADA**

62. Plaintiff incorporates all allegations contained in the foregoing paragraphs, as set forth herein and states:

63. Shortly after Plaintiff engaged in protected activities, Defendant subjected her to a number of actions and conduct that could reasonably dissuade an employee from complaining about disability discrimination and/or seeking an accommodation of a disability.

64. On November 11, 2020, Plaintiff requested an alternative placement accommodation via email. (See Doc 10.2 p 2-3). A day later, on November

16

12, 2020, Supervisor Tyrone Henry called Plaintiff and threatened her with termination if she did not immediately return to work, without addressing her accommodation needs.

65. On November 17, 2020, Plaintiff requested an accommodation by completing and submitting a "Request for Job Assistance Form" via email. (See Doc 10.2 pp 4- 5). Seven days later on November 24, 2020, Defendant's Manager of Occupational Medical Services,  Phyllis Walker, threatened to terminate Plaintiff, without addressing her accommodation needs.

66. On November 24, 2020, Plaintiff requested an accommodation via a telephone call with Phyllis Walker. (See Doc 10.2 p 6-7).  During the conversation, Phyllis Walker threatened Plaintiff with termination, without addressing her accommodation needs.  Six days later, MARTA let Plaintiff's November 30, 2020 return-to-work date expire without providing an interim or permanent accommodation.

67. On December 20, 2020, Plaintiff emailed Phyllis Walker a letter complaining about delays in responding to her accommodation requests. The letter included links and references to EEOC Guidance Regarding ADA and COVID-19, and identified vacant positions she was qualified for that

would have met her accommodation needs. (See Doc 10.2 p 7)  This complaint letter was closely followed by Defendant's ongoing refusal to interview her for vacant positions she applied for.

68.  On January 19, 2021, Plaintiff complained about Defendant's failure to respond to her accommodation request. (See Doc 10.2 p 9). Two days later on January 21, 2021, Supervisor Tyrone Henry called Plaintiff again and threatened her with termination, without addressing her need for an accommodation.

69.  On February 8, 2021, Plaintiff filed a charge of discrimination against MARTA with the EEOC, and complained to MARTA in an email letter dated the same day regarding unwarranted delays in addressing her four prior accommodation requests, and her concerns about conduct she described as unlawful retaliation. (See Doc 10.2 p 10).  This complaint was closely followed by Defendant's ongoing refusal to interview her for vacant positions she applied for.

70.  On or about May 11, 2021, Plaintiff submitted her application for short-term disability benefits. MARTA retaliated by denying Plaintiff's application, with no explanation except for Adriana Johnson's claim that MARTA

18

"dropped the ball." To date, MARTA has made no effort to correct any alleged inadvertent failure to process her application.

71. On June 7, 2021, Plaintiff asked Adrianna Johnson why she was not being allowed to return to work with an accommodation in light of her physician's letter. Less than two months later (on July 20, 2021), Plaintiff learned from HR representative Ms. Johnson that MARTA had "dropped the ball" and denied her May 11, 2021 application for short-term disability benefits. To date, MARTA has made no effort to correct any alleged inadvertent failure to process her application.

72. On September 15, 2021, Plaintiff complained about disability discrimination and supplied MARTA with a copy of EEOC Guidance regarding disability accommodation to support that MARTA's conduct was unlawful. Less than two months later (on October 26, 2021), Defendant acknowledged via email that Plaintiff was qualified for the Supervisor Customer Information Center position she applied for, but declined to interview her for the position. (See Doc 10.3 p 2)

73. Less than two months after her September 15, 2021 complaint, Defendant acknowledged via an email dated November 8, 2021 that Plaintiff was

qualified for the Dispatcher Radio Communication position she applied for, but declined to interview her for the position. (See Doc 10.3 p 1)

74. On February 14, 2022, May 12, 2022,  June 10, 2022 and  July 28, 2022, Plaintiff submitted evidence to EEOC regarding ongoing discrimination and retaliation, which Defendant was aware of.   Twenty days later, while the EEOC investigation was still active, MARTA terminated Plaintiff's employment.

75. The average temporal proximity between Plaintiff's above-referenced protected activities and the dissuasive adverse actions MARTA subjected her to was approximately 19.3 days.

76. All of the alleged dissuasive actions occurred less than two months following one or more of Plaintiff's protected activities. *See Rohttis v. The Sch. Dist. of Lee Cnty.*, 2:21-cv-737-JES-NPM (M.D. Fla. Aug. 1, 2022) (two months gap between adverse action and protected activity is sufficient as a matter of law to infer a causal relationship for purposes of retaliation.)

77.  MARTA's obstruction in returning Plaintiff to work and denial of her short-term disability benefits deprived her of over two years of income.

78. MARTA's refusal to accommodate Plaintiff's disabilities, coupled with its refusal to reassign her to a vacant position she was admittedly qualified for,

prevented her from returning to work despite her physician's documented permission to do so.

79. The ADA's retaliation statute provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

80. Plaintiff engaged in a protected activity and was subjected to adverse employment actions subsequent to or contemporaneous with her protected activity.

81. There was a causal connection between the protected activity and the adverse employment action.

82. Plaintiff engaged in protected activity continuously and repeatedly from November 11, 2020 until at least July 28, 2022, including requesting reasonable accommodations on multiple occasions, complaining about unwarranted delays, filing an EEOC Complaint and participating in the EEOC investigation. *See Mercado Cordova v. Walmart Puerto Rico, Inc.*, 369 F. Supp. 3d 336, 357 (D.P.R. 2019) ("[R]equesting reasonable

21

accommodation and/or disability-related benefits, such as leaves of absence, may constitute protected conduct under anti-retaliation provisions")

83. After Plaintiff requested reasonable accommodation and repeatedly expressed her opposition to MARTA's unlawful response to her requests, her supervisors discarded her short-term disability application and threatened to fire her on at least 5 occasions if she did not return to work at once, without the benefit of an accommodation consistent with her doctor's restrictions.

84. Defendant has no legitimate, non-retaliatory reason for the adverse actions. Defendant never proposed, discussed or communicated bus modifications or any other alternative accommodation to Plaintiff during the entire time she remained on unpaid leave.

85. The reasons offered by Defendant for denying Plaintiff's accommodation requests are pretextual.

## COUNT FOUR
### Retaliation in Violation of the
### Section 504 of the Rehabilitation Act

86. Plaintiff incorporates all allegations contained in the foregoing paragraphs, as set forth herein and states:

87. Plaintiff engaged in a protected activity and Defendant knew of the Plaintiff's protected activity.

88. Plaintiff experienced an adverse action by the Defendant, and there is a causal connection between the protected activity and the adverse action.

89. Defendant has no legitimate, non-retaliatory reason for the adverse actions.

90. The reasons offered by Defendant are pretextual.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

91. WHEREFORE, Plaintiff respectfully requests that:

    a. Plaintiff be awarded a declaratory judgment that Defendant violated the ADA and the Rehabilitation Act;

    b. Plaintiff be granted judgment against Defendant on all counts of the Complaint;

    c. Plaintiff recover from Defendant back pay and fringe benefits, with prejudgment interest thereon;

d.  Plaintiff recover from Defendant reinstatement or front pay and

fringe benefits, with prejudgment interest thereon;

e.  Plaintiff be awarded compensatory damages in an amount to be

determined by a jury;

f.  Plaintiff be awarded attorneys' fees and costs of litigation and

g.  Such other and further and different relief as this court deems

just and appropriate.

Respectfully submitted this 29th day of June, 2025.


/s/ Arnold J. Lizana
Law Offices of Arnold J. Lizana III
GA Bar No.: 698758


1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
Tel./Fax 877-443-0999
alizana@attorneylizana.com

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that on this date I electronically filed this Certificate of

Service for Plaintiff's Second Amended Complaint.


Noah Green
HENEFELD & GREEN, P.C.
3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com
*Attorney for Defendant MARTA*

I also hereby certify that I have mailed electronically to the attorney listed

above the document that is named in this Certificate of Service on this 29th day of

June 2025.

/s/ Arnold J. Lizana
Law Offices of Arnold J. Lizana III
GA Bar No.: 698758
1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
alizana@attorneylizana.com

## RULE 5.1B CERTIFICATE OF TYPE, FORMAT AND FONT SIZE

Pursuant to Local Rule 5.1B of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed and prepared with double spaces between lines using Times New Roman font of 14 point size.

This 29th day of June, 2025.

/s/ Arnold J. Lizana, III